at all. Mr. Bransky, good morning. Good morning, Your Honor. Good morning, Your Honor. Good morning, Your Honors. May it please the Court, Eric Bransky on behalf of the appellants. Your Honors, before I begin, may I reserve three minutes for rebuttal? You may. Thank briefing in this case. This case has a lot of substantive issues. Some of them are novel, and there's a pretty wide breadth of facts alleged in the case. However, we think that this case turns on procedure more than anything else, and that's where I'd like to begin. We believe that the District Court's decision, as issued in our brief, did not afford my and Iqbal progeny. The Cardigan case, which was just recently decided by this Court in 2015, again assessed the issue of what notice pleading is. And notice pleading is not meant to be pleading with specificity. It is not meant to prove your prima facie case, and it is not meant to be held to an evidentiary standard. It is merely meant to give the defendants an idea of the claims that are asserted against them with some level of particularity that exceeds bare legal conclusions. And what we have in this case is a 12C motion, a judgment on the pleadings motion, and a motion to amend the complaint that were both before the District Court. And respectfully, we believe that the District Court reviewed the complaint and not only to a standard that is higher than Twombly and Iqbal, but a standard that would even exceed pleading with specificity under Rule 9B for fraud type cases. There's still a plausibility component of the new standard, which necessarily requires us to take a look at the facts pled to see if it plausibly states claim for relief. Absolutely. And we believe that we met that both in the amended complaint and second amended complaint. And of course, you have to assess, Judge Thompson, the merits of the case when reviewing that. But the Court has said, and before we get to the merits, that you have to, when you're looking at plausibility, take a holistic approach. You need to use common sense. You still need to afford reasonable inferences to the plaintiff or to the non-moving party in this case. And you need to allow that individual to have all the benefits afforded on a Rule 12 motion. And we believe that was met here. Now, we're well aware of the fact, on the merits and on the facts, that land use cases are typically not meant to be in federal district court. 1983 cases have been held by this Court and by other courts to be particularly difficult cases. And there has to be, as Justice Breyer pointed out in the Village of Willowbrook case, the quote-unquote X factor at issue. And the run-of-the-mill land use cases, as you see, is a developer or a property owner not getting his way before a district, before a planning board or a zoning board, and then suing for First Amendment retaliation or equal protection, claiming that the animosity and the maliciousness stem from anti-development sentiments or neighboring objections and the like. This is not that case. This is a unique case. Do you have any case of this circuit that holds that those, the kind of case that you filed here is a petition for grievance? The issue of whether a real estate developer, property owner, seeking redress, petitioning the government to seek redress for grievances before a zoning or planning board seems to be an undecided issue in this jurisdiction. In this jurisdiction? In this jurisdiction. But other jurisdictions, most notably the Second Circuit right next door, have decided that issue, notably the Hampton Bay case. And that's an important issue. The reasoning the Hampton Court made and what the other courts, Sixth Circuit, Ninth Circuit, and I believe the District of Columbia, if I remember correctly, have essentially stated that the First Amendment applies to all levels of petitioning the government. It applies not only to petitioning the court and filing claims for judicial process, but it also involves petitioning administrative bodies, such as seeking an IRS refund. That's interesting because such per se rules would seem to go against Iqbal and Twombly's plausibility requirements that would depend more on the nature of the particular dispute. This dispute is one with First Amendment interests on both sides. The government has an interest in being able to speak when they have objections to a developer's plans, particularly when they're based on facts of record that have to do with possible environmental contamination of the water supply of a particular town. That happens to be the record in this case. And so we get back to the plausibility standard, whether or not some other circuit would use a label to say all development issues are subject to First Amendment petition rights. The First Circuit has never viewed it in those terms. Your Honor, I think we have to look at the two issues. The issue of whether a property owner petitioning before a zoning board or a local board of that nature, whether that within the bounds of the First Amendment, is in fact an undecided issue in this jurisdiction. But the legal issue itself has been decided in other jurisdictions. Yes, but that's what I'm questioning because broad statements of law like that are things that we tend not to do. We have been asked to review the district court's dismissal that is based on the facts that are pled and in one instance, I think, judicial notice. So I guess I'm urging you to get back to Judge Thompson's question. Yes, Your Honor. So the X factor, Judge Lynch and Judge Thompson, that makes this case different is where the animosity and maliciousness stem from. I couldn't find a case in any jurisdiction where you had a property owner outbid a governmental entity in purchasing a piece of property, which is what happened in this case, and then seek to develop that property by way of petitioning and free speech before the local entity and then have the government retaliate in such a way that it did in this case. Now, Judge Lynch, you're absolutely correct that the government certainly has a free speech right, but just as any other person who has a free speech right, that cannot be based on false reasons, maliciousness, et cetera. And what happened here The only thing that the town did was to put him through the paces. I mean, it may have been more than he had hoped to have to do in order to get his permits, but what beyond requiring him to get the extra tests have you pled here? Well, we have pled that the Water District engaged in an orchestrated campaign that ultimately resulted in the project getting denied in the first place. The rumors that were spread were false, and that's what we've pleaded. And we proved that through evidence, and we allege that in the complaint that the expert testimony that was presented before the planning board and in the Board of Health was in fact proof that there were no issues with nitrates or drinking water, et cetera. We pled the fact. No, no, no. You don't start at the end of the process. You start at the beginning of the process where there was a nitrate concern in this town, and it was validated with some scientific evidence. It was not unreasonable for anyone to want to put your client through the paces given this reasonable concern. So that can't be what distinguishes this case. It may be in the end the concerns were proven not to be true, but that doesn't mean government is not entitled to have those concerns. But when you have to draw inferences when you're looking at the Rule 12 standard, when you're looking at the complaint... Yeah, and the inferences I draw are that the Water District was perfectly justified in having these concerns and actually was required to have acted on them, that you can't plead that there is no legitimacy to the concerns against the factual record in this case. Which includes the school being monitored. Well, we had the facts attached and pled in the complaint. The fact that the Water District itself had produced reports, and we pled this, that demonstrated that there weren't any nitrate issues that even came close to the EPA or DEP level. We pled the fact that the Water District at the very time that they were complaining and taking this adverse action against my client, and it's much broader than we could talk about in 13 minutes of time, produced a town-wide report that said, people of Seekonk, your water is well below EPA limits, it's well below DEP limits. The Water District, and we pled, is running their own cesspool closer to the well they were so concerned about than our client. The Water District itself is running a septic system for their treatment plant closer to the well than our client's property. And the maliciousness, as was held in the Topalian case, which I know Judge Lynch presided over, and that was an equal protection case, the pleading standards are even further relaxed, and the circuit has held, when that maliciousness and that animosity is there, and the X factor exists. In this case, what happened, as I stated before, is you have to read the whole complaint in context. We need to look at the entirety of the complaint. And the second amended complaint set forth with even more specificity. So I understand that the EPA's website had an article saying nitrates, high nitrates in groundwater can cause issues, but that is a factual issue. They have to have some basis for that. They can't be sending reports. The court cannot take judicial notice of an EPA report that says there is a problem with nitrates. You consider that an issue?